## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**U.S. AUTO SALES, INC. D/B/A<br>US AUTO SALES, ET AL.,**[1]<br><br>Debtors. | **Chapter 7**<br><br>**Case No. 23-11251 (TMH)**<br><br>**(Jointly Administered)**<br><br>**Requested Hearing Date: TBD**<br>**Requested Obj. Deadline: TBD** |

### MOTION OF ALLY BANK AND ALLY FINANCIAL, INC.
### FOR RELIEF FROM THE AUTOMATIC STAY AND
### FOR APPLICATION OF 11 U.S.C. § 362(e)

Pursuant to 11 U.S.C. § 362(d)(1) and (d), Federal Rules of Bankruptcy Procedure 4001 and 9014, and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), Ally Bank and Ally Financial, Inc. (together, the "Ally Parties"), as secured lenders under the Inventory Financing and Security Agreement (as more particularly described below), with the consent of Don A. Beskrone, Chapter 7 trustee (the "Trustee") on the terms set forth herein, respectfully move the Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting relief from the automatic stay and for certain other relief more particularly described below with respect to Debtor U.S. Auto Sales, Inc.'s used vehicle inventory and all proceeds thereof. In support of their Motion, the Ally Parties rely on the *Declaration of Todd Heney* (the "Heney Declaration") attached hereto as **Exhibit B**, and show the Court as follows:

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: U.S. Auto Sales, Inc. (2294), U.S. Auto Finance, Inc. (9544), U.S. Auto Receivables Financing, LLC (2297), USASF, LLC (8885), USASF National Corp. (4652) and USASF Servicing, LLC (5315).

## PRELMINARY STATEMENT

1.      The Ally Parties seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) to enable them to continue the process of liquidating the vehicle inventory of Debtor U.S. Auto Sales, Inc. ("U.S. Auto Sales") in which the Ally Parties have a first-priority, perfected security interest. The Ally Parties had, with the consent and cooperation of U.S. Auto Sales, begun this process nearly four months before the Petition Date (as defined below) after U.S. Auto Sales had defaulted on its loan obligations to the Ally Parties and had ceased its operations. Time is of the essence for the Ally Parties to have the ability to continue liquidating its collateral because every day that passes that delays their liquidation efforts negatively impacts the recovery value of that collateral.

2.      The Ally Parties have communicated with the Trustee regarding the relief sought in this Motion, and the Trustee consents to the granting of stay relief, subject to his reservation of rights set forth below and in the Proposed Order attached as **Exhibit A**.

## PARTIES, JURISDICTION, AND VENUE

3.      On August 25, 2023 (the "Petition Date"), U.S. Auto Sales and five affiliated debtors (together, the "Debtors") filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). On September 26, 2023, the Court entered an order (Docket No. 14) authorizing the joint administration and procedural consolidation of these Chapter 7 cases pursuant to Bankruptcy Rule 1015(b).

4.      This Court has subject matter jurisdiction over this matter and personal jurisdiction over the Debtors pursuant to 11 U.S.C. § 362, 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

6.      This Motion is a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(G).

7.      Pursuant to Local Rule 9018-1(f), the Ally Parties consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## STATEMENT OF FACTS

8.      On or about October 15, 2020, the Ally Parties and U.S. Auto Sales entered into an Inventory Financing and Security Agreement effective as of October 15, 2020, a true and correct copy of which is attached hereto as **Exhibit C** (as amended, the "Financing Agreement"). Heney Declaration ¶9.

9.      Pursuant to the Financing Agreement, the Ally Parties agreed to provide U.S. Auto Sales with wholesale inventory floorplan finance accommodations by, among other things, loaning money to U.S. Auto Sales to enable it to purchase motor vehicles from sellers for its retail sale to customers. *Id*. At ¶10.

10.      Pursuant to the Financing Agreement, U.S. Auto Sales granted the Ally Parties a lien upon and security interest in all of U.S. Auto Sales' "Vehicles, including but not limited to those for which either of the Ally Parties provides Inventory Financing; other inventory; equipment; fixtures; accounts, including factory open accounts of Dealership; deposit and other accounts with banks and other financial institutions; cash and cash equivalents; general intangibles; all documents; instruments; investment property; and chattel paper," and "any and all accessions, additions, attachments, replacements, substitutions, returns, profits, and proceeds in whatever form or type" of any of the foregoing (collectively, the "Collateral"). Ex. C, Financing Agreement § III.D.1. Heney Declaration ¶11.

3

11.     To perfect its interests in the Collateral, among other things, the Ally Parties caused a UCC-1 financing statement naming U.S. Auto Sales as debtor to be filed in the Office of the Superior Court Clerk in Gwinnett County, Georgia on October 13, 2020.  A true and correct copy of that UCC-1 financing statement is attached hereto as **Exhibit D**. In Georgia, all filings under the Uniform Commercial Code are made at the local level and can be made in any of Georgia's counties. Heney Declaration ¶12.

12.     The Ally Parties are party to an Intercreditor Agreement effective October 16, 2020 (as amended, the "Intercreditor Agreement"), pursuant to which the Ally Parties subordinated their interests in certain of the Collateral to MidCap Financial Trust ("MidCap"). A true and correct copy of the Intercreditor Agreement is attached hereto as **Exhibit E**. Under the Intercreditor Agreement, the Ally Parties agreed to subordinate their interests in the Administrative Agent Collateral (as defined in the Intercreditor Agreement) to MidCap. Critically, the Ally Parties retained their first priority security interest in U.S. Auto Sales' Used Vehicle Inventory (as defined in the Intercreditor Agreement). Heney Declaration ¶13.

13.     Events of default occurred under the Financing Agreement, which entitled the Ally Parties to, among other things, (a) demand immediate payment in full of all Obligations (as defined in the Financing Agreement) owed to the Ally Parties, and (b) take immediate possession of the Collateral and sell, lease, or otherwise dispose of it. Those defaults included, among other things, (a) the failure of U.S. Auto Sales to promptly pay the principal amount due to the Ally Parties for vehicles it sold in accordance with the Financing Agreement, and (b) the breach by U.S. Auto Sales of certain of its financial covenants contained in the Financing Agreement. *Id.* at ¶14.

14.     U.S. Auto Sales suspended its operations in April 2023. *Id*. at ¶15.

US.360065821.02

15. By letter dated April 20, 2023, the Ally Parties provided U.S. Auto Sales with written notice of default under the Financing Agreement and made demand on U.S. Auto Sales for the immediate surrender of the Ally Parties' collateral. *Id*. at ¶16.

16. Soon thereafter, U.S. Auto Sales began cooperating with the Ally Parties in connection with the Ally Parties' exercise of its remedies under the Financing Agreement and applicable law. To that end, the Ally Parties and U.S. Auto Sales entered into a Voluntary Surrender of Collateral Agreement effective April 20, 2023, a true and correct copy of which is attached hereto as **Exhibit F** (the "Collateral Surrender Agreement"). Pursuant to the Collateral Surrender Agreement, U.S. Auto Sales surrendered immediate possession of all motor vehicles to the Ally Parties and agreed at the Ally Parties' request to surrender all other assets pledged by U.S. Auto Sales to the Ally Parties. The Ally Parties have a first-priority security interest in all of the approximately 1,300 motor vehicles surrendered to it pursuant to the Collateral Surrender Agreement (collectively, the "Repossessed Vehicles"). The Collateral Surrender Agreement granted the Ally Parties a limited power of attorney to act in U.S. Auto Sales' name to take actions necessary or appropriate in connection with the sale or other disposition of the Repossessed Vehicles. Heney Declaration ¶17.

17. Between April 20, 2023 and the time the Ally Parties learned that U.S. Auto Sales filed for bankruptcy, the Ally Parties sold more than 1,000 of the Repossessed Vehicles and applied the net proceeds of those sales to reduce the balance owed by U.S. Auto Sales under the Financing Agreement. *Id*. at ¶18.

18. After Ally's application of the sale proceeds for the sale of the Repossessed Vehicles described in Paragraph 17 above, the total balance due the Ally Parties under the Financing Agreement as of October 4, 2023, is $4,785,745.92, which is comprised of the following

5

amounts: (a) unpaid principal of $3,587,104.43; (b) accrued unpaid interest from March 1, 2023, through the Petition Date totaling $732,147.71; (c) accrued unpaid interest from August 26, 2023, through October 4, 2023, totaling $38,260.83; (d) unpaid late fees from April 1, 2023, through the Petition Date totaling $34,471.99; (e) unpaid late fees from August 26, 2023, through October 4, 2023, totaling $3,627.55; (f) repossession, remarketing and related expenses totaling $390,133.41. In addition, based on the outstanding principal balance as of October 4, 2023, interest will continue to accrue at the *per diem* rate of $1,125.32, and late charges will continue to accrue at the *per diem* rate of $87.44. The Ally Parties have incurred attorneys' fees through September 30, 2023, of $25,809. There are no post-petition arrears under the Financing Agreement or related late fees (other than as set forth above). The Ally Parties have not made any advances under the Financing Agreement for taxes or insurance, and there is no unearned interest due under the Financing Agreement. *Id.* at ¶19.

19.     There remain 277 Repossessed Vehicles in the Ally Parties' possession (collectively, the "Remaining Vehicles"). The Remaining Vehicles are identified by VIN number in **Exhibit G** attached hereto. Heney Declaration at ¶20.

20.     The current value of the Remaining Vehicles, if immediately transferred by U.S. Auto Sales to the Ally Parties, is estimated by Mr. Heney to be no more than $1,762,626.  *Id.* at ¶28. Mr. Heney has decades of experience in the auto floorplan financing industry and six years of experience in auto floorplan financing workouts in distressed debt situations in particular. Mr. Heney estimates that the realizable value of the Remaining Vehicles will average no more than 70% of the clean Black Book value for the vehicles, an amount consistent with the Ally Parties' substantial experience in liquidating vehicle inventories from distressed or defaulting dealerships and, specifically, their sale of the Repossessed Vehicles to date. The Remaining Vehicles are

unlikely to be worth a greater value because of their age, condition and mileage, because their value will likely continue to depreciate in the several weeks (at the soonest) between now and the completion of the sale process and because the Remaining Vehicles may have mechanical problems, interior or exterior wear or other undisclosed issues. In addition, the Ally Parties have incurred approximately $300 in costs per vehicle, and they expect to incur additional costs associated with the sale process, including fees from the auction house, costs to transfer the title, storage costs and insurance costs – all of which are estimated to cost more than $100 per vehicle. Heney Declaration ¶27. *See also Id*. at ¶¶21-26 and 28-30.

21.    Debtor USASF National Corp. and non-Debtor USASF Holdco LLC executed Guaranties dated October 16, 2020 pursuant to which those entities unconditionally guaranteed the payment of all obligations U.S. Auto Sales owes to the Ally Parties. Thus, U.S. Auto Sales, USASF Holdco LLC, and USASF National Corp. are jointly and severally liable for the outstanding principal obligation under the Financing Agreement.

## RELIEF REQUESTED

22.    By this Motion, the Ally Parties seek relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code in the form of a Proposed Order attached hereto as **Exhibit A**, which provide for the automatic stay to be modified to permit the Ally Parties immediately to continue taking all action with respect to their remedies under the Financing Agreement and applicable law with respect to their Collateral, including but not limited to the Remaining Vehicles.

## BASIS FOR RELIEF REQUESTED

23.    Section 362(d) of the Bankruptcy Code provides, in part, as follows:

(d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2)     with respect to a stay of an act against property under subsection (a) of this section, if:
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Each subsection in section 362(d) is an independent ground for granting relief from the automatic stay. *See Nazareth Nat. Bank v. Trina-Dee, Inc*., 731 F.2d 170, 171 (3d Cir. 1984) ("Only in cases where the court finds an equity in the debtor, or where the court finds that the property is necessary to an effective reorganization, is it necessary to consider the first ground for relief from the stay— the adequacy of protection of the secured party seeking relief."); *Matter of 1025 Assocs., Inc.,* 106 B.R. 805, 811 (Bankr. D. Del. 1989) ("a ruling under either subsection (d)(1) or (d)(2) is all that is necessary for relief").

24.     Moreover, relief from the automatic stay is mandatory once a court determines that the requirements set forth in either subsection (d)(1) or (d)(2) have been satisfied. *See* 11 U.S.C. § 362(d) (providing "the court *shall* grant relief from the stay") (emphasis added); *see also In re Indian Palms Assocs., Ltd*., 61 F.3d 197, 206 (3d Cir. 1995) ("the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met"); *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 (3d Cir. 1993) ("Section 362(d)(1) *requires* a bankruptcy court to grant relief if the creditor would not otherwise have 'adequate protection' of an interest in the property in question.") (emphasis added).

25.     Here, the Ally Parties are entitled to mandatory relief from the automatic stay independently under each subsection (d)(1) and (d)(2) of section 362(d). First, the Ally Parties are entitled to relief from the automatic stay pursuant to section 362(d)(1) because they have not been provided (and cannot be provided) adequate protection for their secured interest in the Remaining Vehicles. Second, the Ally Parties are independently entitled to relief from the automatic stay

under section 362(d)(2) because U.S. Auto Sales is not attempting to reorganize and has no equity interest in the Remaining Vehicles, which have a net current value below the amount of the Ally Parties' secured interest.

**I.      Cause Exists for Relief from the Automatic Stay under Section 362(d)(1) Because the Ally Parties Lack Adequate Protection in the Remaining Vehicles.**

26.      Under section 362(d)(1), once the Ally Parties make a *prima facie* showing that the value of the Remaining Vehicles is less than its secured interest in the property at issue and its value will continue to diminish, the burden shifts to the Trustee to show otherwise, and that the Ally Parties can be provided adequate protection. *See Matter of Rexene Prods. Co.,* 141 B.R. 574, 577 (Bankr. D. Del. 1992); *see also In re Rocco*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005) ("Debtors bear the burden of proof on all issues other than equity"), *aff'd*, 255 Fed. App'x 638 (3d Cir. 2007); 11 U.S.C. § 362(g) ("[T]he party requesting [] relief [under § 362(d)] has the burden of proof on the issue of the debtor's equity in property," while any "party opposing such relief has the burden of proof on all other issues.").

27.      The Ally Parties are entitled to relief from the automatic stay pursuant to section 362(d)(1) because they lack adequate protection of their interests in the Remaining Vehicles. Adequate protection may be provided by (i) requiring the debtor-in-possession to make a cash payment or periodic cash payments, (ii) providing the creditor with an additional or replacement lien, or (iii) granting such other relief as will protect the party whose interest is being affected by the automatic stay. 11 U.S.C. § 361. The Trustee has not offered adequate protection in any form to the Ally Parties, and the Trustee has not committed to store, protect, and insure the Remaining Vehicles. Thus, the Ally Parties' interests in the Remaining Vehicles are not adequately protected and cause exists to lift the automatic stay to allow the Ally Parties to exercise all of their contractual and state-law rights and remedies with respect to the Remaining Vehicles.

US.360065821.02

28.     Under section 362(d)(1) of the Bankruptcy Code, the Court "shall grant relief from the [automatic] stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1); *Rocco v. J.P. Morgan Chase Bank*, 255 Fed. App'x 638, 641 (3d Cir. 2007). The "purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Hartman*, 2016 WL 1183175, at *7 (D.N.J. Mar. 28, 2016) (quoting *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994)).

29.     While not defined in the Bankruptcy Code, "[c]ause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007); *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (cause is "based on the totality of the circumstances in each particular case"). Courts find cause to lift the automatic stay where the debtor fails to demonstrate adequate protection of the creditors' interest. *See Rocco*, 255 Fed. App'x at 641 (affirming finding of cause to lift stay where debtor "had not offered adequate protection").

30.     "[I]n determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion' – the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims." *In re Price*, 370 F.3d 362, 377 (3d Cir. 2004); *see also Matter of 1025 Assocs., Inc.*, 106 B.R. at 810 ("Under § 362(d)(1), adequate protection exists if the value of [the creditor's] collateral exceeds the value of its claim and the difference is either great enough to absorb interest accrual or the debtor is servicing the debt.").

US.360065821.02

31.     Here, the Court should grant the Ally Parties relief from the automatic stay to permit them immediately to continue exercising all of their contractual and state-law rights and remedies with respect to the Remaining Vehicles, including liquidating the Remaining Vehicles and applying the proceeds from that liquidation to the outstanding principal amount owed by U.S. Auto Sales to the Ally Parties under the Financing Agreement, because the Ally Parties' interest in the Remaining Vehicles has no equity cushion to protect it from further losses to the current value of the Remaining Vehicles that will indisputably arise if relief is not granted to enable the Ally Parties to continue liquidating the Remaining Vehicles.

**II.     The Stay Should Be Lifted Under Section 362(d)(2) Because There is No Equity in the Remaining Vehicles and U.S. Auto Sales is Not Reorganizing.**

32.     Section 362(d)(2) of the Bankruptcy Code is clear, in circumstances in which "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization," a court "shall grant relief from the stay." 11 U.S.C. § 362(d)(1)-(2).

33.     While "[t]he Bankruptcy Code does not define the term 'equity' in section 362(d)(2)(A) or in any other section," the "classic" test in the Third Circuit "for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value." *Indian Palms*, 61 F.3d at 206-07; *see also In re Colonial Ctr., Inc.*, 156 B.R. 452, 460 (Bankr. E.D. Pa. 1993) ("[E]quity under section 362(d)(2) . . . is a function of the value of the collateral and the total of the liens against it."); *In re Cmmw. Renewable Energy, Inc.*, 540 B.R. 173, 193 (Bankr. W.D. Pa. 2015) (where the value of property "is equal to or less than the amount of the liens, there is no equity"). In other words, a debtor does not have an equity in property where "the creditor is undersecured." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988).

34.     Here, the current estimated net value of the 38 Remaining Vehicles for which the Ally Parties currently are able to deliver marketable title is no more than 70% of the clean Black Book value for those vehicles, which have an approximate estimated collective value of $236,810. If the Ally Parties are unable to obtain marketable title for the other 239 Remaining Vehicles, they will have no value, and the Ally Parties will be forced to abandon them. If the Ally Parties, however, are able to obtain marketable title for all of those other Remaining Vehicles, their current estimated value will be no more than 70% of the clean Black Book, or approximately $1,525,816, collectively. In summary, the value of the Remaining Vehicles is no more than $1,762,626, and the liens against them in favor of just Ally Parties (not to mention any subordinate liens) are nearly $3.6 million.

35.     Moreover, because U.S. Auto Sales ceased operations before the Petition Date, surrendered all of its Used Car Inventory (including the Remaining Vehicles) to the Ally Parties pursuant to the Collateral Surrender Agreement and filed for chapter 7 relief, it is not reorganizing.

36.     For these reasons, the Court independently should grant the Ally Parties relief from the automatic stay to permit them to exercise all of their contractual and state-law rights and remedies with respect to the Remaining Vehicles, including liquidating the Remaining Vehicles and applying the proceeds from that liquidation to the outstanding principal amount owed by U.S. Auto Sales to the Ally Parties under the Financing Agreement.

## **WAIVER OF BANKRUPTCY RULE 6004(a) and 6004(h)**

37.     In light of the need to expeditiously liquidate the Remaining Vehicles to maximize their value, the Ally Parties seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen-day (14-day) stay of an order requirement under Bankruptcy Procedure 6004(h) so that the Order is effective immediately upon entry.

US.360065821.02

## APPLICATION OF SECTION 362(e)

38.     The Ally Parties request the application of Section 362(e) of the Bankruptcy Code.

## RESERVATION OF RIGHTS OF TRUSTEE

39.     The Trustee consents to the relief the Ally Parties request in the Motion, subject to his express reservation of all rights, arguments and defenses regarding the Ally Parties, including the right to (i) seek and obtain an accounting of the Obligations and challenge the amount and calculation of the claims asserted by the Ally Parties, (ii) challenge the validity, priority or extent of any lien or security interest asserted by the Ally Parties, seek to avoid any lien or security interest asserted by the Ally Parties, seek the avoidance and recovery of any transfer made to or for the benefit of the Ally Parties, and seek any remedy, including disgorgement, in connection with any successful challenge, and (iii) receive any proceeds of the Remaining Vehicles that exceed the amount of the Obligations owed to the Ally Parties.

## NOTICE

40.     The Ally Parties have provided notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Debtors; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Ally Parties submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

41.     No prior request for the relief sought herein has been made by the Ally Parties to this or any other court.

**WHEREFORE**, the Ally Parties respectfully request that the Court (i) modify the automatic stay imposed by section 362 of the Bankruptcy Code to permit the Ally Parties to exercise any and all of their contractual and state-law rights and remedies with respect to any

13

proceeds of their Collateral, including, without limitation, the Repossessed Vehicles, not yet applied to the obligations owed under the Financing Agreement and with respect to all of the Remaining Vehicles and the proceeds of their disposition; provided, however, that such relief would be subject to the express reservation of all of the Trustee's rights, arguments and defenses regarding the Ally Parties, including the right to (a) seek and obtain an accounting of the Obligations and challenge the amount and calculation of the claims asserted by the Ally Parties, (b) challenge the validity, priority or extent of any lien or security interest asserted by the Ally Parties, seek to avoid any lien or security interest asserted by the Ally Parties, seek the avoidance and recovery of any transfer made to or for the benefit of the Ally Parties, and seek any remedy, including disgorgement, in connection with any successful challenge, and (c) receive any proceeds of the Remaining Vehicles that exceed the amount of the Obligations owed to the Ally Parties; and (ii) grant to Lender such other and further relief as the Court may deem necessary or appropriate.

[Remainder of Page Left Blank Intentionally –
Signature Page Follows]

14

US.360065821.02

Dated:  October 16, 2023
Wilmington, Delaware

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
222 Delaware Ave., Suite 1410
Wilmington, DE 19801
Phone: (302) 467-4200
brett.fallon@faegredrinker.com

and

David M. Schilli (*pro hac vice* pending)  (NC Bar No 17989)
Brendan P. Biffany (*pro hac vice* pending) (NC Bar No 54761)
Robinson, Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Phone:  (704) 377-2536
dschilli@robinsonbradshaw.com
bbiffany@robinsonbradshaw.com

*Attorneys for Ally Bank and Ally Financial, Inc.*

US.360065821.02