# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>U.S. Auto Sales, Inc. d/b/a US Auto Sales, *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-11251 (TMH)<br><br>(Jointly Administered) |

**MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION FOR AN ORDER (I) (A) GRANTING IT RELIEF FROM THE AUTOMATIC STAY TO SETOFF AMOUNTS OWED TO IT AGAINST AMOUNTS HELD IN DEPOSIT ACCOUNT OR, IN THE ALTERNATIVE, (B) DETERMINING THE AUTOMATIC STAY DOES NOT APPLY BECAUSE SUCH FUNDS ARE SUBJECT TO A CONSTRUCTIVE TRUST, AND (II) AUTHORIZING WELLS FARGO TO TERMINATE DEPOSITORY ACCOUNTS AND TURNOVER FUNDS**

Wells Fargo Bank, National Association ("Wells Fargo"), by its undersigned attorneys, hereby files this *Motion of Wells Fargo Bank, National Association for an Order (I)(A) Granting It Relief from the Automatic Stay to Setoff Amounts Owed to It Against Amounts Held in Deposit Account or, in the Alternative, (B) Determining the Automatic Stay Does Not Apply Because Such Funds are Subject to a Constructive Trust, and (II) Authorizing Wells Fargo to Terminate Depository Accounts and Turnover Funds* (this "Motion"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") granting relief from the automatic stay pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") (a) to permit Wells Fargo to terminate all depository accounts that the above-captioned Debtors maintained at Wells Fargo, which are listed on **Schedule 1** attached hereto (collectively, the "Accounts"), and turnover all funds held in the Accounts (less the amounts to be setoff described herein) to Don A. Beskrone, the Chapter 7 Trustee (the "Chapter 7 Trustee") or the counterparty

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: U.S. Auto Sales, Inc. (2294), U.S. Auto Finance, Inc. (9544), U.S. Auto Receivables Financing, LLC, (2297), USASF, LLC (8885), USASF National Corp. (4652) and USASF Servicing, LLC (5315).

under the applicable deposit account control agreement. In support of this Motion, Wells Fargo states the following:

## I.    PRELIMINARY STATEMENT[2]

1. Wells Fargo seeks relief from the automatic stay pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") to permit Wells Fargo to exercise its right to setoff the prepetition amounts owed to it against the prepetition funds held in the Operating Account (as defined herein) as of the Petition Date (as defined herein) or, alternatively, determining the automatic stay does not apply because the funds held in the Operating Account are subject to a constructive trust.

2. In addition, Wells Fargo seeks authorization to terminate all depository accounts that the Debtors maintained at Wells Fargo, which accounts are listed in Schedule 1, and turn over all funds held in the Accounts (less the amounts to be setoff or subject to a constructive trust as described herein) to the Chapter 7 Trustee or the counterparty to the applicable deposit account control agreement.

## II.    JURISDICTION & VENUE

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 & 1409.

5. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning given to them in this Motion.

2

Wells Fargo consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### III.     BACKGROUND

**A.     The Debtors' Chapter 7 Cases.**

6. On August 25, 2023 (the "Petition Date"), U.S. Auto Sales, Inc. ("U.S. Auto Sales") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in this Court.

7. Following the Petition Date, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as interim Chapter 7 Trustee in these cases. A meeting of creditors under and pursuant to section 341(a) of the Bankruptcy Code was held and concluded on September 27, 2023. Therefore, pursuant to section 702(d) of the Bankruptcy Code, Mr. Beskrone serves as the trustee of the Debtors' bankruptcy estates.

**B.     Wells Fargo's Prepetition Relationship with U.S. Auto Sales.**

8. Prior to the Petition Date, Wells Fargo served as the depository bank for certain Debtors, including, primarily, U.S. Auto Sales. Among the Accounts that U.S. Auto Sales maintained at Wells Fargo was U.S. Auto Sales' operating account for which the last 4 digits of the account number are 1895 (the "Operating Account").

9. As of the Petition Date and for many months preceding the Petition Date, the Operating Account was overdrawn by approximately $1,518,459.68, less a credit to the Operating Account in the amount of approximately $587,645.65. The $587,645.65 credit in the Operating Account resulted from returns by the Florida Department of Revenue (the "Department of

Revenue") of ACH debits by the Department of Revenue from the Operating Account while that account was overdrawn.

10. The banking relationship between Wells Fargo and U.S. Auto Sales is governed, in part, by a Commercial Account Agreement (the "Account Agreement"). A copy of the Account Agreement is attached hereto as **Exhibit B**.

11. The Account Agreement grants Wells Fargo a lien on and security interest in the Operating Account and further grants Wells Fargo the right to set off debts owed by U.S. Auto Sales to Wells Fargo against amounts held in the Operating Account. See Exhibit B, Account Agreement, at p. 10.

12. Prior to the Petition Date, as shown in the statement account attached hereto as **Exhibit C**, the Operating Account was overdrawn by approximately $1,518,459.68.

13. After the Operating Account was overdrawn, between August 21-29, 2023, returns from the Department of Revenue were received and posted by Wells Fargo to the Operating Account, as shown in the statement attached hereto as **Exhibit D**. Of the returns from the Department of Revenue, $553,556.70 was posted to the Operating Account prior to the Petition Date, while $34,088.95 was posted to the Operating Account after the Petition Date.[3]

C. **Wells Fargo's Claim Against U.S. Auto Sales & Priority Thereof.**

14. On December 11, 2023, Wells Fargo timely filed a Proof of Claim [Claim No. 242] (the "Wells Fargo Proof of Claim") asserting a claim in the amount of $1,518,459.68 against U.S. Auto Sales for its prepetition overdraft of the Operating Account, of which $587,645.65 is subject

---

[3] As the result of discussions with the Trustee prior to filing this Motion, Wells Fargo has agreed not to assert a right to set off or impose a constructive trust upon the $34,088.95 that was posted to the Operating Account after the Petition Date. In the event that an objection to this Motion is filed by another party, Wells Fargo expressly reserves the right to supplement or amend this Motion and argue, in the alternative, that all funds held by Wells Fargo are subject to a constructive trust in favor of Wells Fargo.

to Wells Fargo's right to setoff or, alternatively, a constructive trust in favor of Wells Fargo (the "Wells Fargo Claim").

15. As of the Petition Date, the Operating Account was subject to a Deposit Account Control Agreement ("DACA") among US Auto Sales, Wells Fargo, and MidCap Financial Trust ("MidCap"), U.S. Auto Sales' prepetition lender. A true and correct copy of the DACA is attached as **Exhibit E**.

16. Even though MidCap has not released the DACA for the Operating Account where the funds from the Department of Revenue were returned, the funds in the Operating Account would not be subject to any lien in favor of MidCap because the DACA excluded from the subordination provision Wells Fargo's rights to make "debits to the Collateral Accounts permitted under this Agreement for the payment of Returned Item Amounts, Settlement Item Amounts or Bank Fees." Exhibit E § 11. The term "Bank Fees" is defined to include "funds advanced to cover overdrafts in the Collateral Accounts," and "Returned Items" are defined to include "any Credit to a Collateral Account made in error." Exhibit E § 9. Settlement Item Amounts are defined to include, among other things, all checks or other payment orders drawn against the account. Exhibit E § 8.

17. As of the Petition Date, the Accounts listed in Schedule 1 ending in account numbers 1895, 0579, 2812, 7860, and 7371 were subject to deposit account control agreements (together, the "DACA Accounts"); however, Wells Fargo does not seek relief in this Motion to setoff funds held in the DACA Accounts other than funds held in the Operating Account

18. As of the Petition Date, the Accounts listed in Schedule 1 ending in account numbers 5498, 1663, 1671, and 8263 were not subject to deposit account control agreements and the Accounts listed in Schedule 1 ending in 1655, 9246, and 9859 are no longer subject to deposit

account control agreements (together, the "No DACA Accounts"). Wells Fargo does not seek relief in this Motion to setoff funds held in the No DACA Accounts.

## IV. ARGUMENT

### A. Wells Fargo Should be Granted Relief from the Automatic Stay to Allow Wells Fargo to Exercise Its Setoff Rights.

19. Section 362 of the Bankruptcy Code stays acts of setoff pending an "orderly examination of the debtor's and creditor's rights." *See* 11 U.S.C. § 362(a)(7); *Biggs v. Stoven (In re Luz Int'l, Ltd.)*, 219 B.R. 837, 84 (9th Cir. BAP 1998). Wells Fargo has a valid right of setoff under the Account Agreement, and section 362(d) empowers the Court to grant relief from the automatic stay to permit Wells Fargo to set off its claim for the overdrawn Operating Account against $553,556.70, the funds posted to the Operating Account as of the Petition Date.

20. Section 362(d) of the Bankruptcy Code permits a court to grant relief from the automatic stay and specifically provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of any interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary for an effective reorganization.

11 U.S.C. § 362(d).

21. Courts have held that establishing a right to setoff constitutes sufficient cause to grant relief from the automatic stay. *See e.g., In re Nuclear Imaging Sys.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000) ("Courts have generally concluded that the existence of mutual obligations

6

subject to set-off constitutes sufficient 'cause' to meet the creditor's initial evidentiary burden in seeking relief from the stay") (internal citations omitted); *In re Ealy*, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008) ("[upon establishing its setoff rights] the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under § 362(d)(1)."). "Once the creditor establishes its right of setoff, the burden shifts to the debtor to rebut the prima facie showing." *Id*.

22. Section 553(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case…

11 U.S.C. § 553(a).

23. "The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). "[T]he text and legislative history of § 553(a) itself makes clear that the purpose of the statute is to preserve a creditor's state law rights to setoff pre-petition mutual debts in bankruptcy." *In re Bridge Info. Sys., Inc.*, 341 B.R. 421, 430-31 (Bankr. E.D. Mo. 2004) (citations omitted). "There is nothing in the text or the legislative history of § 553(a) or any other Code provision that gives the court the power to diminish that right." *Id.*

24. The elements necessary to exercise a right of setoff under section 553(a) of the Bankruptcy Code are the following: (a) a debt exists from the creditor to the debtor that arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor that arose before commencement of the bankruptcy case; and (c) the debt and the claim are mutual

obligations. *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3d Cir. 2000). The debts sought to be setoff may arise from different transactions, but they must be mutual. *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002). Debts are mutual "when they are due to and from the same persons in the same capacity." *In re SemCrude* LP, 399 B.R. 388, 393 (Bankr. D. Del. 2009) (quoting *In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995)).

25. Section 553 of the Bankruptcy Code "preserves *any* setoff right regardless of origin, not just those at common law." *In re Lehman Bros. Inc.*, 458 B.R. 134, 139 (Bankr. S.D.N.Y. 2011). As a result, section 553 of the Bankruptcy Code also preserves contractual setoff rights.

26. Here, each of the elements necessary to exercise a right of set off under section 553(a) of the Bankruptcy Code is satisfied. First, U.S. Auto Sales is indebted to Wells Fargo in the amount of $1,518,459.68 as a result of the overdrawn Operating Account, and Wells Fargo has a contractual right to setoff under the Account Agreement. Second, both Wells Fargo's claim against U.S. Auto Sales for the overdrawn Operating Account and U.S. Auto Sales' claim against Wells Fargo to the funds in the Operating Account arose prior to the Petition Date. Finally, the claim and debt are mutual, in that they arise between U.S. Auto Sales and Wells Fargo acting on their own behalf. *See In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd* 428 B.R. 590 (D. Del. 2010).

27. Wells Fargo therefore holds a valid and enforceable right of setoff against the Debtor under section 553(a) of the Bankruptcy Code, the Account Agreement, and common law and, as a result, this Court should modify the automatic stay to permit Wells Fargo to exercise its setoff rights as to the $553,556.70 that was posted to the Operating Account prior to the Petition Date.

28. The bankruptcy estate cannot provide any adequate protection of Well Fargo's interest. Adequate protection may be provided by (i) requiring the trustee to make a cash payment or periodic cash payments, (ii) providing the creditor with an additional or replacement lien, or (iii) granting such other relief as will protect the party whose interest is being affected by the automatic stay. 11 U.S.C. § 361. The Chapter 7 Trustee has not offered any form of adequate protection to Wells Fargo. Thus, Wells Fargo's interests in the Operating Account are not adequately protected and cause exists to lift the automatic stay to allow Wells Fargo to exercise all of its contractual and state-law rights and remedies with respect to the Operating Account.

29. Further, U.S. Auto Sales does not have any equity in the Operating Account, and the Operating Account is not necessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2). Section 362(d)(2) of the Bankruptcy Code provides that where "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization," a court "shall grant relief from the stay." 11 U.S.C. § 362(d)(1)-(2). As the Third Circuit has explained, the "classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value." *In re Indian Palms Associates, Ltd.*, 61 F. 3d 197, 206-7 (3d Cir. 1995); *In re Colonial Ctr., Inc.*, 156 B.R. 452, 460 (Bankr. E.D. Pa. 1993) ("[E]quity under section 362(d)(2) . . . is a function of the value of the collateral and the total of the liens against it."). And as the Supreme Court noted, a debtor does not have an equity in property where "the creditor is undersecured." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988).

30. Therefore, cause exists within the meaning of sections 362(d)(1) and (d)(2) of the Bankruptcy Code to allow Wells Fargo to setoff against the funds held in the Operating Account.

9

B.  **The Automatic Stay Does Not Apply Because the Funds are Held in Constructive Trust.**

31.     Alternatively, Wells Fargo asserts that the funds held in the Operating Account are subject to a constructive trust in favor of Wells Fargo and, as a result, those funds are not property of the bankruptcy estate and are not subject to the automatic stay. *See In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1058-60 (3d Cir. 1993); *Mid-Atlantic Supply, Inc. of Va. v. Three Rivers Aluminum Co. (In re Mid-Atlantic Supply Co.)*, 790 F.2d 1121, 1126–28 (4th Cir. 1986). The creation of a constructive trust is governed by state law. *In re Bake-Line Grp., LLC*, 359 B.R. 566, 571 (Bankr. D. Del. 2007) (citing *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989); *see also, Georgia-Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 967 (5th Cir. 1983).

32.     Under Delaware law, a constructive trust is a flexible equitable remedy designed to prevent a party from being unjustly enriched by fraudulent, unfair or unconscionable conduct at the expense of another. *Ruggerio v. Estate of Poppiti*, No. CIV. A. 18961-NC, 2005 WL 517967, at *3 (Del. Ch. Feb. 23, 2005); *In re Opus E.*, 528 B.R. at 106 ("The imposition of a constructive trust is also appropriate where a defendant has been unjustly enriched.").

33.     A constructive trust may be imposed where (i) there was an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law. *In re Direct Response Media, Inc.*, 466 B.R. 626, 661 (Bankr. D. Del. 2012).

34.     These elements are satisfied here because allowing U.S. Auto Sales to retain the funds would result in an enrichment of U.S. Auto Sales and corresponding loss to Wells Fargo, in circumstances where there is no proper legal justification for U.S. Auto Sales to be enriched as a result of its severely overdrawn Operating Account and Wells Fargo's advance of its own funds to

the Department of Revenue through the Operating Account and subsequent return of the funds Wells Fargo advanced. Wells Fargo also lacks an adequate remedy at law.

### C. Wells Fargo Should be Authorized to Turnover the Funds Held in the Accounts

35. In addition, Wells Fargo requests authorization, and, to the extent necessary, relief from the automatic stay to terminate the Accounts and turnover the funds held in the DACA Accounts (less the amount subject to setoff or a constructive trust held in the Operating Account) to the counterparty to the applicable deposit account control agreement and to turnover the funds held in the No DACA Accounts to the Chapter 7 Trustee.

### V. REQUEST FOR WAIVER OF THE 14-DAY STAY PURSUANT TO BANKRUPTCY RULE 4001(a)(3)

36. Bankruptcy Rule 4001(a)(3) provides that an "an order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). Wells Fargo requests that the relief requested in the Motion be effective immediately upon entry of the order granting this Motion.

37. Wells Fargo continues to incur costs associated with maintaining the Accounts. Wells Fargo seeks authorization from this court, out of an abundance of caution to release the funds held in the Accounts in connection with the deposit account control agreements or in the event that such agreement does not exist for the account to the Chapter 7 Trustee.

### VI. GOOD FAITH DISCUSSIONS WITH THE CHAPTER 7 TRUSTEE

38. Prior to filing this Motion, Wells Fargo engaged in good faith communications with the Chapter 7 Trustee and his counsel regarding the relief sought in this Motion. To date, the Chapter 7 Trustee and Wells Fargo have been unable to reach a consensual resolution of the issues

raised in this Motion; however, Wells Fargo will continue to work with the Chapter 7 Trustee to reach a consensual resolution.

### VII.   NOTICE

39.   Notice of this Motion is being provided to: (a) counsel for the Debtor; (b) the Chapter 7 Trustee; (c) the Office of the United States Trustee; (d) MidCap; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. Wells Fargo respectfully submits that no other or further notice is required.

**WHEREFORE,** Wells Fargo respectfully requests that this Court enter the Proposed Order attached hereto as **Exhibit A** and grant relief from the automatic stay to permit Wells Fargo to exercise its right to setoff the amounts owed to it against the funds held in the Operating Account, or, alternatively, determine that the funds in the Operating Account are not subject to the automatic stay because they are held in constructive trust, and grant it authority to terminate Accounts and turnover the funds held in DACA Accounts (less the amount subject to setoff or a constructive trust held in the Operating Account) to the counterparty to the applicable deposit account control agreement and to turnover the funds held in the No DACA Accounts to the Chapter 7 Trustee; and grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: December 6, 2024<br>Wilmington, Delaware | */s/ Matthew G. Summers*<br>Matthew G. Summers (DE No. 5533)<br>Margaret A. Vesper (DE No. 6995)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Facsimile: (302) 252-4466<br>E-mail: summersm@ballardspahr.com<br>            vesperm@ballardspahr.com<br><br>and<br><br>Charles E. Nelson<br>BALLARD SPAHR LLP<br>2000 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402-2119<br>Telephone: (612) 371-3211<br>Facsimile: (612) 371-3207<br>E-mail: nelsonc@ballardspahr.com<br><br>*Counsel for Wells Fargo Bank, National Association* |

## SCHEDULE 1

| Last Four Digits of Account No. | Owner | Current Balance | DACA |
|---|---|---|---|
| 1895 | U.S. Auto Sales Inc. | $588,329.71 | MidCap |
| 5498 | U.S. Auto Sales Inc. | $193.08 | |
| 1655 | U.S. Auto Finance, Inc. | $188,673.47 | Terminated by Secured Party 10/31/2023 |
| 0579 | U.S. Auto Finance, Inc. | $0.00 | MidCap |
| 9246 | U.S. Auto Finance, Inc. | $3,184.01 | Terminated by Secured Party 10/31/2023 |
| 2812 | U.S. Auto Finance, Inc. | $0.00 | Westlake Capital Finance, LLC |
| 9859 | U.S. Auto Funding Trust 2020-1 | $0.00 | Terminated by Secured Party 4/24/24 |
| 7860 | U.S. Auto Finance, Inc. | $0.00 | Wells Fargo Bank, N.A. |
| 7371 | U.S. Auto Finance, Inc. | $0.00 | Computershare Trust Company, N.A. |
| 1663 | USASF Servicing LLC | $0.00 | |
| 1671 | USASF Servicing LLC | $0.00 | |
| 8263 | U.S. Auto Funding Trust 2019-1 LLC | $0.00 | |